UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROTECTIVE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | Case No. 20-cv-03611 |
| v. | ) ) ) | Judge Sharon Johnson Coleman |
| DARRELL BOLDEN, | ) ) | |
| Defendant/Counter-Plaintiff | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Protective Insurance Company ("Protective") brings this action for declaratory judgment against Darrell Bolden ("Bolden"). Bolden filed counterclaims for declaratory judgment and breach of contract. Before the Court are the parties' cross motions for summary judgment. For the reasons stated below, the Court denies Plaintiff/Counter-Defendant's motion [46] and grants Defendant/Counter-Plaintiff's motion [39].

**Background**

The following facts are undisputed unless otherwise noted. In the summer of 2018, Bolden worked as a pickup and delivery driver employed by Team Strategic, Inc. ("Team Strategic"), a contractor with FedEx. Initially, Bolden drove a number of vehicles, each of which were assigned to him by one of his supervisors, Michael Boler ("Boler"). Around the end of July 2018, Boler assigned Bolden to drive a 2007 Freightliner delivery truck. At the time, the 2007 Freightliner was not a scheduled auto under Team Strategic's insurance policy with Protective (the "Policy"). Rather, Boler provided Bolden with an insurance card for a 1998 Freightliner, which another driver totaled in September 2017. Protective contends, and Bolden disputes, that Team Strategic thereafter sold the 1998 Freightliner for parts. Bolden maintains that Team Strategic intended to repair the vehicle and used the 2007 Freightliner as its temporary substitute under the Policy.

On August 20, 2018, Bolden was involved in a motor vehicle accident for which he was not at fault (the "Accident"). The next day, one of Team Strategic's owners, Carmelo Soto ("Soto") called Team Strategic's insurance broker. Bolden objects to the Court's consideration of conversation, in which Soto asked to terminate coverage for the 1998 Freightliner "as far back as possible" because the 1998 auto had been sold for parts. (Dkt. 48-3.) Protective retroactively terminated coverage to July 22, 2018 and credited the previously paid premiums. Soto also added the 2007 Freightliner to the Policy effective August 21, 2018. (*Id.*)

As a result of his injuries, Bolden claims damages exceeding $800,000. Because the at-fault driver was underinsured, he received only $25,000 from the at-fault driver's insurance payout. Bolden additionally received $106,904.17 from a worker's compensation claim settlement. Protective denied coverage when Bolden attempted to receive coverage for his injuries under the underinsured motorist ("UIM") provision of the Policy.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). When determining whether a genuine dispute as to any material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Lovelace v. Gibson*, 21 F.4th 481, 483 (7th Cir. 2021). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (citation omitted).

**Discussion**

The parties' dispute comes down to two issues: 1) whether the 2007 Freightliner served as a temporary substitute for the 1998 Freightliner at the time of the Accident; and 2) whether Protective retroactively terminated coverage for the 1998 Freightliner. The Court holds that the 2007 Freightliner served as a temporary substitute and the retroactive termination was not effective.

Temporary Substitute Auto

Protective argues that Team Strategic did not use the 2007 Freightliner temporarily or as a substitute for the 1998 Freightliner. Under the Policy's UIM Coverage Endorsement, "insureds" are those who occupy a covered auto or a "temporary substitute for a covered 'auto,'" which "must be out of service because of its breakdown, repair, servicing, 'loss' or destruction." (Dkt. 41-3 at 78.) The purpose of the temporary substitute provision is "not to defeat liability but, rather, to provide additional coverage for the insured yet reasonably define coverage by limiting the insurer's risk to one operating vehicle at a time for a single premium." *Standard Mut. Ins. Co. v. Sentry Ins. Co.*, 146 Ill. App. 3d 905, 911, 497 N.E.2d 476 (1st Dist. 1986).

The Policy does not specify the maximum length of time such a substitute may be used. Therefore, the Court interprets the contract to give effect to the parties' intent as expressed in the Policy. *Hobbs v. Hartford Ins. Co.*, 214 Ill.2d 11, 17, 823 N.E.2d 561, 564 (Ill. 2005). The Court gives unambiguous terms their plain and ordinary reading, considering the nature of the risks involved and the purpose of the contract as a whole. *Mkt. St. Bancshares, Inc. v. Fed. Ins. Co.*, 962 F.3d 947, 952 (7th Cir. 2020), *reh'g denied* (July 10, 2020). Where language is ambiguous, "policy terms that limit an insurer's liability will be liberally construed in favor of coverage." *Id.*

Bolden's use of the 2007 Freightliner was temporary under the Policy. Protective argues that Team Strategic's use of the 2007 Freightliner could not be temporary because the 1998 Freightliner was totaled eleven months before the Accident. The language of the policy, however, makes clear that "temporary" modifies Team Strategic's use of the substitute and not the period of time the

3

covered auto remained non-operational. *See e.g., State Farm Mut. Auto. Ins. Co. v. Johnston*, 9 Cal. 3d 270, 274 (Cal. 1973). Bolden used the 2007 Freightliner for less than thirty days, a length of time which Protective admits could be reasonably temporary. (Dkt. 55 at 5.) Further, Team Strategic's delay in replacing the 1998 Freightliner was reasonable. That vehicle had been totaled in an accident and its driver never returned to work. (Dkt. 48-4 at 13:2–3.) Thereafter, Team operated without one of its drivers until Bolden filled the position. (*Id.*) In the meantime, Team Strategic did not use another vehicle as a substitute for the 1998 Freightliner. (*Id.* at 34:18-21.)

Next, the Court holds that Bolden used the 2007 Freightliner as a substitute for the 1998 Freightliner. Protective argues that because Soto added the 2007 Freightliner to the Policy the day after the Accident, Team Strategic intended to use it as a replacement for the 1998 Freightliner when it acquired the vehicle. The record does not support this conclusion. To the contrary, Soto testified in his deposition that Team Strategic leased the 2007 Freightliner while it determined whether to purchase it and use it on a full-time basis. (Dkt. 48-3 at 22-24). While a temporary substitute can transform into a permanent replacement, Protective does not cite evidence which supports that such a transformation occurred prior to the Accident. Protective maintains that the 1998 Freightliner had been sold for parts, which it argues demonstrates that the 2007 Freightliner served as a permanent replacement. There is a genuine dispute as to this fact, but it is not material. The Policy does not require the insured to be in possession of the covered vehicle while it searches for its replacement. This is clear from the language of the Policy, which allows for a temporary substitute where the covered auto is lost or destroyed.

Retroactive Termination

Next, Bolden argues that Protective and Soto could not effectively terminate coverage for the 1998 Freightliner after the Accident. Under Illinois law, "[i]t is almost universal that an insurance liability policy cannot be cancelled *ab initio* or rescinded after an accident occurs giving rise

to third-party rights." *Jadczak v. Mod. Serv. Ins. Co., Inc.*, 151 Ill. App. 3d 589, 596, 503 N.E.2d 794, 799 (1st Dist. 1987) (compiling cases). An injured party has rights that vest at the time of an accident causing their injuries. *Nat'l Union Fire Ins. Co. v, Cary Cmt. Consol. Sch. Dist. No. 26*, No. 93 C 6526, 1995 WL 374018, at *3 (N.D. Ill. June 21, 1995) (Hart, J.). Therefore, where retroactive termination leaves an injured party with little opportunity to recover their losses, "neither the insured nor the insurer, acting separately or together, may act to defeat the rights of the injured person." *Reagor v. Travelers Ins. Co.*, 92 Ill. App. 3d 99, 102, 415 N.E.2d 512, 514 (1st Dist. 1980) (citation omitted); *cf. Nat'l Union Fire Ins. Co.*, 1995 WL 374018, at *3 ("Because [Defendant] maintained continuous liability coverage, [the injured party's] rights as a third party were never seriously at risk.").

In support of its motion, Protective provides a recording and transcript of the telephone conversation between Soto and the insurance broker. Bolden objects to this evidence as hearsay. The Court disagrees. Soto testified in his deposition that he did not remember the conversation, nor was his memory refreshed by review of the transcript. (Dkt. 48-3 at 30:9-23.) He did not object to the accuracy of the conversation or deny that it existed. Therefore, the evidence could be admissible as a recorded recollection under Federal Rule of Evidence 803(5). Further, even if the details of the conversation were inadmissible, the Court's ruling would remain unchanged.

Protective does not dispute the proposition that insurance coverage binds at the time of an accident. (Dkt. 47 at 6.) Rather, it argues that the principle does not apply here because it retroactively terminated coverage for a vehicle not in the Accident—the 1998 Freightliner. This argument does not hold water. The Court holds that the 2007 Freightliner served as a temporary substitute for the 1998 Freightliner, affording it coverage under the Policy at the time of the Accident. That it was a temporary substitute rather than a specifically scheduled auto is a distinction without a difference.

Further, Protective maintains that the public policy behind this principle, to ensure injured parties are made whole, does not apply to Bolden because he received $25,000 from the at-fault driver and approximately $105,000 from a workers compensation settlement. Bolden received far less than the $800,000 he claims in damages from the Accident. Public policy certainly supports that Bolden, an innocent injured party, receive sufficient opportunity to recover his losses. *Reagor*, 92 Ill. App. 3d at 102.

Finally, Protective argues that the principles in *Jadczak* and *Reagor* do not apply here because Bolden seeks first-party UIM coverage as opposed to third-party liability insurance. 151 Ill. App. 3d at 596; 92 Ill. App. 3d at 102. The Court notes that the facts here are unusual. At the time Soto requested retroactive termination, Protective was unaware of the Accident. The record provides conflicting evidence as to whether Soto knew of the Accident at the time of the call. Nonetheless, he took steps that would greatly prejudice his employee's coverage (and potentially his own exposure to liability). No reasonable business owner would do so under these circumstances. If the termination were valid, Bolden would be highly prejudiced by his employer's actions, made without his knowledge or consent, though coverage existed at the time of the Accident. The Court holds that this case is not inapposite to *Jadczak* and *Reagor*. Therefore, no agreement between Soto and Protective could retroactively terminate insurance coverage for the 1998 Freightliner.

**Conclusion**

For the foregoing reasons, the Court grants Defendant's motion for summary judgment [39] and denies Plaintiff's motion [46].

IT IS SO ORDERED.

Date: 3/21/2022

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge